# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES P. LEBEAU; VICTORIA J. LEBEAU; BANK OF AMERICA, N.A.; STATE OF CALIFORNIA; SAN DIEGO COUNTY; MERCK & CO., INC.; WILLIAM O. DOUGHERTY; and JOSEPH KELLY,<br><br>Defendants. | CASE NO. 17cv1046-GPC(WVG)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART DEFENDANT VICTORIA LEBEAU'S REQUEST FOR A STAY**<br><br>[Dkt. No. 24.] |

Before the Court is Defendants Charles Le Beau and Victora LeBeau's, (collectively "Defendants") proceeding *pro se*, motion to dismiss the first amended complaint. (Dkt. No. 36.) In their motion, they also seek a motion for a stay of proceedings.[1] Plaintiff United States of America filed an opposition. (Dkt. No. 39.) Defendants filed a reply. (Dkt. No. 41.) Based on the reasoning below, the Court

---

[1] Plaintiff notes that Defendants' request for a stay is not proper because they did not file a separate motion. Defendants acknowledge their error but argue that they filed it in the interest of judicial economy and argue that Plaintiff is not prejudiced. In the interests of judicial economy, and in light of the fact that the issue is fully briefed, the Court considers Defendants' request for a stay.

DENIES Defendants Charles LeBeau and Victoria LeBeau's motion to dismiss, and GRANTS in part Victoria LeBeau's motion for a stay.

**Background**

Charles and Victoria LeBeau were married, now legally separated and currently reside together at 1999 Via Segovia, La Jolla, CA 92037 (the "Property"). (Dkt No. 33, FAC ¶ 3.) The United States has judgment liens against both Charles and Victoria Le Beau, and the United States seeks to enforce its judgment liens against their interests in the Property. (Id.) Bank of America, N.A., the State of California, Merck & Co., Inc, William O. Dougherty, San Diego County, and Joseph Kelly are named as Defendants because they may each claim an interest in the Property. (Id. ¶¶ 4-9.)

Between 1994 and 2008, a delegate of the Secretary of the Treasury made assessments against Charles and Victoria LeBeau for federal individual income taxes, penalties and interest for the tax years 1992, 1993, 1994, 1995, 1997, 1998 and 1999. (Id. ¶ 11.) From 1995 to 2008, a delegate of the Secretary of the Treasury made assessments against Charles LeBeau for federal payroll taxes owed by him and his sole proprietorship, the Law Offices of Charles P. LeBeaus, for eighteen tax periods between 1994 and 2001. (Id. ¶ 14.)

On April 19, 2010, the United States brought a civil action against Victoria LeBeau, Charles LeBeau, and Charles LeBeau's sole proprietorship to reduce to judgment the federal tax assessments. See United States v. LeBeau, Case No. 10-cv-00817-GPC-NLS (S.D. Cal.). (Id. ¶ 17.) On October 29, 2012, the Court entered a money judgment against Charles and Victoria LeBeau with respect to the federal income tax liabilities in the amount of $1,157,165.85 plus statutory interest accruing after July 1, 2012. (Id. ¶ 18.) The LeBeaus have not made any payments towards the money judgment and it remains unsatisfied. (Id. ¶ 19.) On October 29, 2012, the Court also entered a money judgment against Charles LeBeau, with respect to the employment tax liabilities, in the amount of $371,257.66 plus statutory interest accruing after July 1, 2012. (Id. ¶ 20.) Charles LeBeau has not made any payments

towards the money judgement and it remains unsatisfied. (Id. ¶ 21.)

On August 18, 1980, Charles and Victoria LeBeau acquired the Property as "Husband and Wife, as joint tenants." (Id. ¶ 23.) On April 1, 1987, by quitclaim deed, Charles and Victoria transferred title to the Property to Victoria LeBeau for no consideration. (Id. ¶ 24.) By grant deed dated May 6, 1988, Victoria LeBeau transferred title to the Property to Charles and Victoria LeBeau, as joint tenants for no consideration. (Id. ¶ 25.) On May 11, 1988, five days after the transfer, Charles and Victoria LeBeau executed a deed of trust on the Property in favor of Security Allied Services to secure a loan in the amount of $305,250.00. (Id. ¶ 26.) By quitclaim deed dated August 9, 1989, Charles and Victoria LeBeau transferred title to the Property solely to Victoria LeBeau for no consideration. (Id. ¶ 27.)

By interspousal transfer grant deed dated March 22, 1991, Charles LeBeau again transferred his interest in the Property to his wife, Victoria LeBeau, for no consideration. (Id. ¶ 28.) On April 10, 2003, Charles LeBeau signed and filed Articles of Organization with the California Secretary of State for an entity known as Casa de Erin, LLC, for which he was the registered agent, and which has since been suspended by the California Secretary of State. (Id. ¶ 29.) During its existence, Casa de Erin, LLC was the alter ego/nominee of Charles LeBeau and/or Victoria LeBeau. (Id. ¶ 30.) By quitclaim deed dated April 22, 2003, Victoria LeBeau transferred title to the Property to Casa de Erin, LLC, for no consideration. (Id. ¶ 31.) By quitclaim deed dated January 12, 2006, Casa de Erin, LLC rescinded the deed and transferred the Property back to Victoria LeBeau, for no consideration, who currently remains the Property's nominal title holder. (Id. ¶ 32.) Upon information and belief, Charles LeBeau has continued to reside at the Property and retained all the benefits and burdens of ownership. (Id. ¶¶ 24, 27, 28)

Despite Victoria LeBeau's purported sole ownership in the Property, on July 24, 2014, Charles LeBeau executed a mortgage modification agreement for the Property with Bank of America, the trustee for the Property's mortgage, and he is listed as the

borrower in documents recorded with the San Diego County Recorder's Office on August 1, 2014. (Id. ¶ 34.) For the 2014 tax year, Bank of America issued an IRS Form 1098 to Charles LeBeau for $4,598 in interest paid for the mortgage on the Property; for the 2015 tax year, Bank of America issued an IRS Form 1098 to Charles LeBeau for $4,652 in interest paid for the Property's mortgage. (Id. ¶ 35.)

The FAC claims that Charles and Victoria LeBeau continue to be the true and beneficial owners of the Property and Victoria LeBeau holds Charles LeBeau's interest in the Property as his nominee (Id. ¶¶ 37, 38.) Alternatively, on information and belief, the transfers of the Property were sham transactions made with the intent and purpose to hinder, delay, or defraud the creditors of Charles and Victoria LeBeau, including the United States, and are therefore void. (Id. ¶ 39.) Alternatively, on information and belief, the transfers were not reasonably equivalent exchanges in value and were made at a time when Charles LeBeau knew he had, would have, or intended to incur debts beyond his ability to pay as they became due. (Id. ¶ 40.)

On March 14, 2013, the United States recorded an abstract of the two judgments obtained in Case No. 10cv817 with the San Diego County Recorder's Office. (Id. ¶ 42.) Pursuant to 28 U.S.C. § 3201(f), the United States is entitled to enforce its judgment liens upon the Property, to have the Property sold at a judicial sale free and clear of all rights, titles, claims, liens, and interests of the parties to this action, and to have the proceeds distributed, after payment of the costs of sale, to the United States and to the defendants in accordance with the amount and priority of their claims as they establish in this action. (Id. ¶ 44.)

In sum, the United States asserts three causes of action seeking to "(1) determine that the United States' judgment lien attaches to all property held by Victoria LeBeau, including real property located at 1999 Via Segovia, La Jolla, CA 92037 (the "Property"); (2) determine that Victoria LeBeau holds Charles LeBeau's one-half interest in the Property as nominee for Charles LeBeau or, in the alternative, set aside the transfers of Charles LeBeau's interest in the Property to Victoria LeBeau and Casa

de Erin, LLC as fraudulent conveyances; and (3) to enforce the United States' judgment lien against Charles and Victoria LeBeau upon the Property." (Dkt. No. 33, FAC at 2.)

## Discussion

### A. Federal Rule of Civil Procedure 12(b)(b)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

The Court notes that Defendants dispute the facts alleged by Plaintiff, by

arguments, declarations and submitting documents outside the complaint, to support dismissal of the case. (Dkt. No. 36 at 6-7[2]; Dkt. Nos. 36-2, 36-3.) However, on a motion to dismiss, the Court is required to take the facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Ashcroft, 580 F.3d at 956. Therefore, the Court disregards Defendants' arguments and declines to consider documents outside the complaint that dispute the underlying reasons why there were multiple transfers of the Property. Those issues may be raised after discovery has been completed and on a motion for summary judgment.

Defendants also recognize their obligation to pay the taxes owed, but economic hardship and medical hardships prevent them from fulfilling their obligation to pay the taxes due and are recognized exceptions under the IRS Code. (Dkt. No. 36 at 7-9.) Again, the Court cannot consider facts outside the FAC on ruling on a motion to dismiss and declines to address these facts.

**B.    Legal Standard as to Federal Rule of Civil Procedure 9(b)**

Where a plaintiff alleges fraud in the complaint, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted). Rule 9(b) also applies to claims that are "grounded in fraud" or "sound in fraud." Vess v. Ciba-Geigy Corp., U.S.A., 317 F.3d 1097, 1103-04 (9th Cir. 2003).

Defendants generally argue that Plaintiff failed to plead fraud with particularity under Rule 9(b) but does not explain why the FAC fails to assert facts with specificity. Instead, their arguments are based on facts not contained in the FAC including an assertion that the U.S. Tax Court ruled, in 2014, that Victoria was not responsible for taxes during the years 2002 and 2004-2007. Therefore, the U.S. Tax Court ruling is

---

[2]Pages numbers are based on the CM/ECF pagination.

res judicata or collateral estoppel to the claims in this case. Plaintiff notes that the Tax Court's decision concerned years 2002 and 2004-2007 which do not encompass the tax years of 1992-1999 for which this Court entered judgment in 2012. In any event, the U.S. Tax Court ruling has no applicability on Defendants' Rule 12(b)(6) motion to dismiss.

Defendants also improperly argue that Plaintiff has not alleged with specificity that Defendants had the requisite state of mind to intent to defraud the IRS. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiff is only required to allege state of mind generally and not with particularity. Thus, Defendants' argument is without merit.

### C.    Enforcement of Judgment Liens

As to judgment liens, "[o]n proper application to a court, the court may order the United States to sell, in accordance with sections 2001 and 2002, any real property subject to a judgment lien in effect under this section." 28 U.S.C. § 3201(f).

On October 29, 2012, the Court entered a money judgment against Charles and Victoria LeBeau with respect to the federal income tax liabilities in the amount of $1,157,165.85 plus statutory interest accruing after July 1, 2012, and a money judgment against Charles LeBeau, with respect to the employment tax liabilities, in the amount of $371,257.66 plus statutory interest accruing after July 1, 2012. (Dkt. No. 33, FAC ¶¶ 18, 20.) Accordingly, Plaintiff has alleged a claim to seek the sale of Defendant's Property based on the Court's prior judgment. Thus, the Court DENIES Defendants' motion to dismiss on this claim.

### D.    Nominee Liability

The IRS may impose a federal tax lien "upon all property and rights to property . . . belonging to" a taxpayer who has failed to pay taxes owed after the IRS has made an assessment and demand. 26 U.S.C. § 6321. "The Supreme Court has interpreted

section 6321 to apply to all property of a taxpayer, including property that is held by a third party as the taxpayer's nominee or alter ego." Fourth Inv. LP v. United States, 720 F.3d 1058, 1066 (9th Cir. 2013) (citing G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-51 (1977)). "A nominee is one who holds bare legal title to property for the benefit of another." Id.

While California courts recognize nominee ownership, they have not provided factors to determine whether a person or entity is holding title as a nominee. Id. at 1068. Therefore, the Ninth Circuit has adopted the six-factor test as set out by the Sixth Circuit. The factors are:

> (1) whether inadequate or no consideration was paid by the nominees;
> (2) whether the properties were placed in the nominees' names in anticipation of a lawsuit or other liability while the transferor remains in control of the property;
> (3) whether there is a close relationship between the nominees and the transferor;
> (4) failure to record the conveyances;
> (5) whether the transferor retained possession; and
> (6) whether the transferor continues to enjoy the benefits of the transferred property.

Id. at 1070 (citing Spotts v. United States, 429 F.3d 248, 253 n. 2 (6th Cir. 2005); United States v. Acacia Corporate Mgmt., LLC, 691 Fed. App'x 402, 403-04 (9th Cir. 2017) (district court properly applied six-factor in Fourth Inv. LP.). No one factor is dispositive and courts must look to the totality of the circumstances. Id. The "overarching consideration is 'whether the taxpayer exercised active or substantial control over the property.'" Id. (citing In re Richards, 231 B.R. 571, 579 (E.D. Pa. 1999).

Here, Plaintiff has sufficiently alleged facts asserting a claim that Victoria is holding the property as Charles' nominee. First, Charles Le Beau did not receive adequate consideration for the transfers to Victoria Le Beau. (Dkt. No. 33, FAC ¶ 32). During the years he was accruing federal tax liabilities, Charles Le Beau executed title transfers of the Property to and from his wife and to an entity that he had incorporated. (Id. ¶¶ 11, 14, 23-32.) Charles and Victoria Le Beau were married during the relevant

time period although they later legally separated indicating a close relationship. (Id. ¶ 3.) Charles Le Beau is the only borrower listed on the mortgage for the Property. (Id. ¶ 34.) As recently as 2015, Charles Le Beau received IRS Forms 1098 from Bank of America detailing the amount of interest he paid on the mortgage for the Property. (Id. ¶ 35.) Lastly, since 1980, Charles Le Beau has resided at the Property. (Id. ¶¶ 3, 23 24, 27, 28.)

The Court concludes that Plaintiff has alleged sufficient facts that Charles Le Beau has a one-half interest in the Property that is currently held by Victoria Le Beau as his nominee. Thus, the Court DENIES Defendants' motion to dismiss on this claim.

**E.  Fraudulent Transfer**

Fraudulent transfer under the Federal Debt Collection Procedures Act occurs when a debtor to the United States makes a transfer or incurs the obligation with actual intent to hinder, delay or defraud a creditor. 28 U.S.C. § 3304(b).

Under the statute, to determine actual fraud, the Court may consider the following,

(A) the transfer or obligation was to an insider;

(B) the debtor retained possession or control of the property transferred after the transfer;

(C) the transfer or obligation was disclosed or concealed;

(D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(E) the transfer was of substantially all the debtor's assets;

(F) the debtor absconded;

(G) the debtor removed or concealed assets;

(H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(b).

The FAC claims that Charles and Victoria LeBeau were married and now legally separated but reside together at the Property. (Dkt. No. 33, FAC ¶ 3.) On specific dates between April 1, 1987 to January 12, 2007, the time during which they were accruing federal tax liabilities, Charles and Victoria fraudulently transferred the Property to and from each other without exchanging adequate consideration. (Id. ¶¶ 25, 27, 28, 32.) They concealed the true ownership of the Property by placing the property in the name of Casa de Erin, LLC. (Id. ¶¶ 29, 31.) During this time, Charles LeBeau has continued to reside at the Property and retained all the benefits and burdens of ownership. (Id. ¶¶ 24, 27, 28.)

The Court concludes that Plaintiff has alleged facts to support a claim for fraudulent transfer under Rule 12(b)(6) and Rule 9(b).

## G. Request for a Stay[3]

The LeBeaus also seek a stay of the proceeding until Victoria's administrative claim for innocent spouse relief is determined by the IRS. Plaintiff agrees to a stay concerning Plaintiff's claims to enforce liens against Victoria but only for the tax years 1995, 1997-1999 and not as to tax years 1992-1994.

---

[3] Defendants filed a request for judicial notice of documents in support of their request for a stay of all proceedings pending resolution of Victoria's request for equitable innocent spouse relief. (Dkt. No. 36-1.) Plaintiff opposes arguing the Court cannot consider documents outside the compliant on a motion to dismiss.
The Court may take judicial notice of a fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Defendants do not seek judicial notice in response to the motion to dismiss but in support of their motion for a stay.
Defendants seek judicial notice of eight documents. Exhibit 1 is Victoria LeBeau's request for innocent spouse relief filed on August 30, 2017 and Exhibit 5 is the Ninth Circuit case of Wilson v. Comm'r of Internal Revenue, 705 F.3d 980 (9th Cir. 2013) affirming the Tax Court's ruling that the taxpayer was entitled to innocent spouse relief. The Court finds that Exhibits 1 and 5 may be judicially noticed under Rule 201. However, the other six exhibits concern documents that contain facts that dispute facts alleged in the Complaint and are not proper at this time. Accordingly, the Court GRANTS Defendants' request for judicial notice as to Exhibits 1 and 5 but DENIES Defendants' request for judicial notice of Exhibits 2-4, and 6-8.

On August 30, 2017, Victoria filed a claim for innocent spouse relief for tax years 1992-1995, 1997-1999, the years for which judgment was entered in the underlying case. (Dkt. No. 36-4, Ds' RJN, Ex. 1.) In the underlying case, Victoria had already sought innocent spouse relief as to the 1992-1994 tax years which was denied by the IRS. (Case No. 10cv817-GPC(NLS), Dkt. No. 57 at 5; see also Dkt. No. 27-17 at 1 (IRS Determination).) Victoria did not appeal the IRS' determination with the Tax Court. (Id., Dkt. No. 57 at 5.)

The Internal Revenue Code ("IRC") provides that any IRS collection action should be suspended until the IRS makes a determination on an equitable claim plus 90 days to petition the Tax Court to review the IRS's determination. 26 U.S.C. § 6015(e)(1)(B). The Code allows the IRS six months from the date of filing to make a determination before a requesting spouse can petition the Tax Court. 26 U.S.C. § 6015(e)(1)(A). Therefore, since the petition was filed on August 30, 2017, a decision by the IRS will likely be made by the end of March, and if not, Victoria has 90 additional days to petition the Tax Court. Because Defendants contend that Victoria is the sole owner of the Property, the stay should affect the whole proceeding. However, Plaintiff argues that Charles holds a one-half interest in the Property either through a nominee or fraudulent conveyance theory and the case should proceed as to Charles as well as to Victoria concerning tax years 1995 and 1997-1999. The Court agrees with Plaintiff. Plaintiff has alleged a claim that Charles holds a one-half interest in the Property either through a nominee or fraudulent conveyance theory. Therefore, a determination concerning Charles' interest in the Property has no bearing on the innocent spouse relief before the IRS. Moreover, because the IRS has already denied Victoria's innocent spouse relief for the tax years 1992-1994, a stay as to those years is not appropriate. Accordingly, the Court STAYS the case only as to Victoria LeBeau for tax years 1995, 1997-1999. The remainder of the case shall proceed.

**Conclusion**

Based on the above, the Court DENIES Defendants' motion to dismiss and

GRANTS in part Defendant's motion to stay proceedings as to Victoria LeBeau for the tax years 1995, 1997-1999.  The hearing set for December 15, 2017 shall be **vacated**.

IT IS SO ORDERED.

DATED:  December 8, 2017

HON. GONZALO P. CURIEL
United States District Judge