UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 3:17-cv-01046-GPC-AGS |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART DEFENDANTS' MOTION FOR A STAY AND DENYING DEFENDANTS' EX PARTE MOTION TO EXTEND DEADLINE TO FILE DISPOSITIVE MOTION** |
| CHARLES LEBEAU, ET AL., | |
| Defendant. | |
| | **[Dkt. Nos. 65, 83.]** |

Before the Court is pro per Defendants' motion for a stay pending proceedings in the U.S. Tax Court and any possible appeal to the Ninth Circuit. (Dkt. No. 65.) An opposition was filed. (Dkt. No. 69.) Defendants filed a reply. (Dkt. No. 75.) Pursuant to the Court's order, Plaintiff filed a sur-reply on September 20, 2018. (Dkt. Nos. 76, 77.) A hearing was held on October 12, 2018. Jessica Reimelt, Esq. appeared on behalf of the United States, and Defendants Charles Le Beau and Victoria Le Beau, proceeding pro se, appeared. Based on the reasoning below, the Court GRANTS in part Defendants' motion for a stay.

/ / / /

**Procedural Background**

On May 23, 2017, the United States of America ("Plaintiff") filed a complaint to foreclose judgment liens[1] on real property against Charles ("Charles") and Victoria ("Victoria") LeBeau (collectively "Defendants"). (Dkt. No. 1.) On September 29, 2017, Plaintiff filed a first amended complaint. (Dkt. No. 33.) On December 8, 2017, the Court denied Defendants' motion to dismiss and granted in part Victoria's request for a stay as to Victoria's tax years 1995, 1997-1999 because on August 30, 2017, Victoria had filed a claim for innocent spouse relief for tax years 1992-1995, 1997-1999, the years for which judgement was entered in the underlying case.[2] (Dkt. No. 42 at 11[3]; Dkt. No. 36-4, Ds' RJN, Ex. 1.) However, the Court denied Victoria's request for a stay for the tax years 1992-1994 because she had already sought innocent spouse relief as to the 1992-1994 tax years which was denied by the IRS on April 23, 2000 under 26 U.S.C. § 6015(f) and which was not timely appealed with the Tax Court. (Dkt. No. 42 at 11; see also Case No. 10cv817-GPC(NLS); see also Dkt. No. 27-17 at 1 (IRS Determination).)

On June 6, 2018, after briefing by the parties, the Court granted Plaintiff's motion for leave to file a second amended complaint. (Dkt. No. 47.) On June 11, 2018, Plaintiff filed a second amended complaint ("SAC") seeking to: (1) determine that the United States' judgment and tax liens attaches to all property held by Victoria LeBeau, including real property located at 1999 Via Segovia, La Jolla, CA 92037 (the "Property"); (2)

---

[1] In a related case, on October 29, 2012, the Court entered judgment in favor of United States of America and against Defendants Charles and Victoria Le Beau in the amount of $1,157,165.85 plus interest accruing after July 1, 2012, and also entered judgment against Defendant Charles Le Beau in the amount of $371,257.66 plus interest accruing after July 1, 2012. (See Case No. 10cv817-GPC(NLS), Dkt. No. 68.)

[2] The Internal Revenue Code ("IRC") provides that any IRS collection action should be suspended until the IRS makes a determination plus 90 days to petition the Tax Court to review the IRS's determination or if a petition has been filed with the Tax Court then until a decision by the Tax Court has become final. 26 U.S.C. § 6015(e)(1)(B).

[3] Page numbers are based on CM/ECF pagination.

determine that Victoria LeBeau holds Charles LeBeau's one-half interest in the Property as nominee for Charles LeBeau or, in the alternative, set aside the transfers of Charles LeBeau's interest in the Property to Victoria LeBeau and Casa de Erin, LLC as fraudulent conveyances; and, (3) to enforce the United States' judgment and tax liens against Charles and Victoria LeBeau upon the Property. (Dkt. No. 58.) On July 17, 2018, the Court denied Defendants' motion for declaratory judgment. (Dkt. No. 63.)

During the pendency of this case, on August 30, 2017, Victoria filed a request for innocent spouse relief for multiple tax years, 1992-1995 and 1997-1999. (Dkt. No. 36-4, Ds' RJN, Ex. 1.) On May 16, 2018, the IRS issued a Final Determination as to all these tax years. (Dkt. No. 65-4, Charles' Decl., Exs., 1, 2.) As to tax year 1992, the IRS denied innocent spouse relief pursuant to 26 U.S.C. §§ 6015(b) and (c) as not timely filed. (Dkt. No. 65-4, Charles' Decl., Ex. 1 at 2.) Despite being untimely, the IRS denied equitable relief under § 6015(f) determining that the requirements were not met and concluding, "[y]ou received transferred assets from your spouse or ex-spouse as part of a fraudulent scheme or for the principal purpose of avoiding tax or the payment of tax." (Id. at 3.) For the tax year 1993, innocent spouse relief was denied under §§ 6015(b), (c) and (f). (Id. at 11-12.) For the tax year 1994, innocent spouse relief was denied under §§ 6015(b), (c) and (f). (Id. at 14-15.) For the tax year 1995, innocent spouse relief under § 6015(f) was partially granted in the amount of $193,272.00 and denied in the amount of $40,437.00. (Id. at 17.) For the tax year 1997, innocent spouse relief was denied under §§ 6015(b), (c) and (f). (Id. at 20-21.) For the tax year 1998, innocent spouse relief was denied under § 6015(f). (Id. at 23-24.) For the tax year 1999, innocent spouse relief was denied under § 6015(f). (Id. at 26-27.)

On June 22, 2018, Victoria filed a petition with the United States Tax Court challenging the IRS' determinations. (Id., Ex. 2.) On July 30, 2018, Defendants filed a

motion for a stay of the case pending a ruling by the U.S. Tax Court as well as any appeal to the Ninth Circuit. (Dkt. No. 65.) Around July 31, 2018, Defendants filed a "First Amendment to Petition" in the U.S. Tax Court. (Dkt. No. 75, Ds' Reply, Charles' Decl., Ex. 1 at 8.) Around September 5, 2018, Charles filed a Notice of Intervention in the Tax Court case. (Dkt. No. 75, Ds' Reply, Charles' Decl., Ex. 2 at 16.)

**Factual Background**

According to the SAC, Charles and Victoria LeBeau were married, now legally separated and currently reside together at 1999 Via Segovia, La Jolla, CA 92037 (the "Property"). (Dkt No. 58, SAC ¶ 3.) The United States has judgment and federal tax liens against both Charles and Victoria Le Beau, and the United States seeks to enforce its judgment and tax liens against their interests in the Property. (Id.)

Between 1994 and 2008, a delegate of the Secretary of the Treasury made assessments against Charles and Victoria LeBeau for federal individual income taxes, penalties and interest for the tax years 1992, 1993, 1994, 1995, 1997, 1998 and 1999. (Id. ¶ 11.) Despite timely notice and demand, the LeBeaus failed to pay the assessments. (Id. ¶ 13.) As a result, federal tax liens arose in favor of the United States and against all property and rights to property belonging to Charles and Victoria LeBeau as of the assessment dates. (Id. ¶ 14.) From 1995 to 2008, a delegate of the Secretary of the Treasury made assessments against Charles LeBeau for federal payroll taxes owed by him and his sole proprietorship, the Law Offices of Charles P. LeBeau, for eighteen tax periods between 1994 and 2001. (Id. ¶ 15.)

On April 19, 2010, the United States brought a civil action against Victoria LeBeau, Charles LeBeau, and Charles LeBeau's sole proprietorship[4] seeking to reduce to judgment the federal tax assessments. (Id. ¶ 18.) On October 29, 2012, the Court entered a money

---

[4] United States v. LeBeau, Case No. 10-cv-00817-GPC-NLS (S.D. Cal.).

judgment against Charles and Victoria LeBeau with respect to the federal income tax liabilities in the amount of $1,157,165.85 plus statutory interest accruing after July 1, 2012. (Id. ¶ 19.) The LeBeaus have not made any payments towards the money judgment and it remains unsatisfied. (Id. ¶ 20.) On October 29, 2012, the Court also entered a money judgment against Charles LeBeau, with respect to the employment tax liabilities, in the amount of $371,257.66 plus statutory interest accruing after July 1, 2012. (Id. ¶ 21.) Charles LeBeau has not made any payments towards the money judgment and it remains unsatisfied. (Id. ¶ 22.)

On August 18, 1980, Charles and Victoria LeBeau acquired the Property as "Husband and Wife, as joint tenants." (Id. ¶ 24.) On April 1, 1987, by quitclaim deed, Charles and Victoria transferred title to the Property to Victoria LeBeau for no consideration. (Id. ¶ 25.) By grant deed dated May 6, 1988, Victoria LeBeau transferred title to the Property to Charles and Victoria LeBeau, as joint tenants for no consideration. (Id. ¶ 26.) On May 11, 1988, five days after the transfer, Charles and Victoria LeBeau executed a deed of trust on the Property in favor of Security Allied Services to secure a loan in the amount of $305,250.00. (Id. ¶ 27.) By quitclaim deed dated August 9, 1989, Charles and Victoria LeBeau transferred title to the Property solely to Victoria LeBeau for no consideration. (Id. ¶ 28.)

By interspousal transfer grant deed dated March 22, 1991, Charles LeBeau again transferred his interest in the Property to his wife, Victoria LeBeau, for no consideration. (Id. ¶ 29.) On April 10, 2003, Charles LeBeau signed and filed Articles of Organization with the California Secretary of State for an entity known as Casa de Erin, LLC, for which he was the registered agent, and which has since been suspended by the California Secretary of State. (Id. ¶ 30.) During its existence, Casa de Erin, LLC was the alter ego/nominee of Charles LeBeau and/or Victoria LeBeau. (Id. ¶ 31.) By quitclaim deed

dated April 22, 2003, Victoria LeBeau transferred title to the Property to Casa de Erin, LLC, for no consideration. (Id. ¶ 32.) By quitclaim deed dated January 12, 2006, Casa de Erin, LLC rescinded the deed and transferred the Property back to Victoria LeBeau, for no consideration, who currently remains the Property's nominal title holder. (Id. ¶ 33.) Upon information and belief, Charles LeBeau has continued to reside at the Property and has retained all the benefits and burdens of ownership. (Id. ¶¶ 25, 28, 29)

Despite Victoria LeBeau's purported sole ownership in the Property, on July 24, 2014, Charles LeBeau executed a mortgage modification agreement for the Property with Bank of America, the Trustee for the Property's mortgage, and he is listed as the borrower in documents recorded with the San Diego County Recorder's Office on August 1, 2014. (Id. ¶ 35.) For the 2014 tax year, Bank of America issued an IRS Form 1098 to Charles LeBeau for $4,598 in interest paid for the mortgage on the Property; for the 2015 tax year, Bank of America issued an IRS Form 1098 to Charles LeBeau for $4,652 in interest paid for the Property's mortgage. (Id. ¶ 36.)

The SAC claims that Charles and Victoria LeBeau continue to be the true and beneficial owners of the Property and Victoria LeBeau holds Charles LeBeau's interest in the Property as his nominee. (Id. ¶¶ 38, 39.) Alternatively, on information and belief, the transfers of the Property were sham transactions made with the intent and purpose to hinder, delay, or defraud the creditors of Charles and Victoria LeBeau, including the United States, and are therefore void. (Id. ¶ 40.) Alternatively, on information and belief, the transfers were not reasonably equivalent exchanges in value and were made at a time when Charles LeBeau knew he had, would have, or intended to incur debts beyond his ability to pay as they became due. (Id. ¶ 41.)

On March 14, 2013, the United States recorded an abstract of the two judgments obtained in Case No. 10cv817 with the San Diego County Recorder's Office. (Id. ¶ 43.)

Pursuant to 28 U.S.C. § 3201(f), the United States is entitled to enforce its judgment liens upon the Property, to have the Property sold at a judicial sale free and clear of all rights, titles, claims, liens, and interests of the parties to this action, and to have the proceeds distributed, after payment of the costs of sale, to the United States and to the defendants in accordance with the amount and priority of their claims as they establish in this action. (Id. ¶ 45.) On April 3, 2018, the IRS recorded a Notice of Federal Tax Lien with the San Diego County Recorder of Deeds at Doc. No. 2018-0130582 against the LeBeaus for the federal payroll tax liabilities. (Id. ¶ 47.) The SAC asserts three causes of action for fraudulent transfer and nominee liability, enforcement of judgment liens, and enforcement of federal tax liens. (Id. ¶¶ 23-48.)

**Discussion**

**A.     Request for Innocent Spouse Relief**

A husband and wife filing a joint return are jointly and severally liable for the entire tax liability. 26 U.S.C. § 6013(d)(3) ("the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several."). Under § 6015, three types of relief from joint and several liability are available.

> 1. It relieves an innocent spouse from an understatement of tax attributable to the other spouse's taxable income where the innocent spouse had no reason to know of the income, 26 U.S.C. § 6015(b);
>
> 2. It relieves a separated spouse from an understatement of tax attributable to the other spouse if the joint filers are living apart, no longer married, or legally separated, id. § 6015(c); and
>
> 3. It authorizes equitable relief from an understatement or underpayment of tax if a petitioning spouse does not qualify for relief under either of the first two options, id. § 6015(f).

Christensen v. Comm'r of Internal Revenue, 523 F.3d 957, 960 (9th Cir. 2008).

Under 26 U.S.C. § 6015, a taxpayer seeking to file an election under the innocent spouse statute must first seek relief with the Secretary of the IRS, and then may appeal to the Tax Court. 26 U.S.C. § 6015(e)(1)(A). The Court of Appeals has exclusive jurisdiction to review the decisions of the Tax Court. See 26 U.S.C. § 7482(a)(1) ("The United States Courts of Appeals . . . shall have exclusive jurisdiction to review the decisions of the Tax Court . . . ."). Therefore, the district court has no jurisdiction to decide an innocent spouse claim. Id.; see also United States v. Boynton, No. 05-V-2243-WQH(RBB), 2007 WL 737725, at * 3 (S.D. Cal. Feb. 1, 2007); Andrews v. United States, 69 F. Supp. 2d 972, 978 (N.D. Ohio 1999) (holding that district court lacked jurisdiction to reevaluate taxpayer's tax liability based on innocent spouse defense); United States v. Cawog, No. 02:05CV1652, 2006 WL 1997421, at * 3 (W.D. Pa. June 15, 2006) (explaining that court was without jurisdiction to make a finding that defendant was an "innocent spouse" and absolve her of liability).

**B.     Motion for a Stay[5]**

The district court has broad discretion to stay proceedings as an incident to its power to control its own docket. Clinton v. Jones, 520 U.S. 681, 706 (1997) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). In determining whether to grant a

---

[5] Defendants filed a request for judicial notice of documents. (Dkt. No. 65-2.) Plaintiff does not object because the documents appear to be what Defendants say they are but it reserves the right to object to its admissibility at a later date if the documents are not accurate.
    The Court may take judicial notice of a fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.
    Defendants seek judicial notice IRS Final Determinations letters dated May 16, 2018, Defendants' petition to the U.S. Tax Court, and the case of Fourth Inv. LP v. United States, 720 F.3d 1058 (9th Cir. 2013). Because Plaintiff does not oppose the request and the Court concludes that these documents are subject to judicial notice, the Court GRANTS Defendants' request. See White v. Chevron Corp., Case No. 16cv0793-PJH, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017) (taking judicial notice of IRS filings).

8

motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (citing CMAX Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)). These interests include: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. Id.

On the third factor, Defendants seek a stay pending resolution of the issues of "fraudulent transfers" and "nominee theory of ownership" now before the U.S. Tax Court arguing the Court lacks jurisdiction to consider these issues and a stay would avoid inconsistent rulings.[6] On the second factor, they argue that a stay would cause hardship by being required to pursue litigation in two different courts. Lastly, on the first factor, Defendants contend that a stay would not prejudice the government. In their reply, Defendants further assert that a stay as to Charles is warranted because he, having filed a "Notice of Intervention" on September 5, 2018, is now involved in the equitable spouse relief issue that is now before the U.S. Tax Court. Plaintiff opposes arguing that the Court does not lose jurisdiction based on a filing of a petition with the U.S. Tax Court and that a stay would harm the United States.

First, Defendants argue that the Court has lost jurisdiction over the case since they have petitioned the U.S. Tax Court on issues similar to the ones raised in this Court but they fail to provide any legal authority for their summary contention. Defendants do not dispute that the Court has jurisdiction to foreclose under 26 U.S.C. § 7403, and 28 U.S.C. § 3201(f). (See Dkt. No. 75, Ds' Reply at p. 4.) They also do not dispute that the U.S.

---

[6] Defendants also spend much of their brief discussing the merits of the case which the Court notes are not appropriate at this stage of the proceeding.

9

Tax Court, not the district court, has jurisdiction to review a claim for innocent spouse relief. See e.g., 26 U.S.C. § 7482(a)(1) ("The United States Courts of Appeals . . . shall have exclusive jurisdiction to review the decisions of the Tax Court . . . ."); see also Boynton, 2007 WL 737725, at *3-4 (innocent spouse relief to be brought before the U.S. Tax Court, and then the Court of Appeals, not district court). Therefore, the foreclosure issue is properly before this Court and the innocent spouse relief issue is properly before the U.S. Tax Court. Defendants have not provided any legal authority that the district court loses jurisdiction over a factual issue that may be raised in the U.S. Tax Court.

Defendants also argue that the Court should stay the case due to the potential of inconsistent rulings on the issues of "fraudulent transfer" and "nominee theory of ownership"[7] that the U.S. Tax Court will be addressing. Plaintiff disagrees arguing that even if the U.S. Tax Court made rulings on whether the conveyance was fraudulent, and that determination has collateral estoppel effect, it would not resolve all issues in the case. Plaintiff explains that even if Victoria was granted innocent spouse relief, if Charles were found to have an interest in the Property through either a nominee or fraudulent transfer theory of liability, the United States would still be allowed to foreclose its lien against the Property.

While it is true that the Court has discretion to foreclose on a taxpayer's property even though it may affect the property rights of an innocent third party, United States v. Rodgers, 461 U.S. 677 (1983), the equities in this case warrant a stay.

As to the issue of fraudulent transfer, Defendants refer to the IRS' denial of Victoria's innocent spouse relief where the reason for the denial was based on a finding that Victoria received assets from Charles as "part of a fraudulent scheme or for the principal purpose of avoiding tax or the payment of tax." (Dkt. No. 65-4, Charles Decl.,

---

[7] There is no indication that the issue of nominee liability is before the U.S. Tax Court.

Ex. 1 at 2.) It is not clear what factors the IRS considers to make a determination on whether to grant innocent spouse relief. At the hearing, the government argued that fraudulent transfer is one of many factors that the IRS considers and res judicata may not apply because the U.S. Tax Court may not consider fraudulent transfer as a factor in reviewing the IRS' Final Determinations. At this stage, the issue of res judicata has not been fully addressed by the parties; it is not clear whether it would apply in this case and therefore, it is not clear whether a stay would avoid inconsistent rulings.

Notwithstanding Defendants' res judicata argument, the Internal Revenue Code ("IRC") provides that any IRS collection action should be suspended until a decision concerning innocent spouse relief by the Tax Court has become final. 26 U.S.C. § 6015(e)(1)(B); 26 C.F.R. § 1.6015-7(c). In a prior order, the Court granted Victoria's request for a stay for the tax years 1995, and 1997-1999 because Victoria had filed a petition for innocent spouse relief with the IRS, but denied the stay as to tax years 1992-1994 because the IRS had already denied Victoria's innocent spouse relief for those years. (Dkt. No. 42 at 11.) The Court explained that because Plaintiff alleged a claim that Charles holds a one-half interest in the Property either through a nominee or fraudulent conveyance theory, a determination concerning Charles' interest in the Property had no bearing on the innocent spouse relief before the IRS. (Id.)

When Victoria filed her request for innocent spouse relief on August 30, 2017, she sought relief for all the tax years 1992-1995 and 1997-1999. (Dkt. No. 36-4, Ds' RJN, Ex.1.) On May 16, 2018, the IRS issued a Final Determination as to all the tax years 1992-1995 and 1997-1999 even though the IRS had already made Final Determinations for the tax years 1992-1994 on April 23, 2000 and a determination on July 24, 2002 as to

11

3:17-cv-01046-GPC-AGS

tax year 1995.[8] (Dkt. No. 65-4, Charles Decl., Exs. 1, 2; Dkt. No. 42 at 11; Dkt. No. 77-1 at 1.) On June 22, 2018, Victoria filed a petition with the U.S. Tax Court challenging all the determinations. (Dkt. No. 65-4, Charles Decl., Ex. 2 at 6-8.) Currently pending before the U.S. Tax Court are requests for innocent spouse relief for all the years that are at issue in this case. At the motion hearing, the government indicated that it had filed a motion to dismiss with the U.S. Tax Court for the tax years 1992-1995 based on the IRS' prior determinations, and a ruling should be issued shortly.

Based on the procedural posture of this case, a stay should be granted as to Victoria as to all the years that are subject to this litigation since the innocent spouse relief issue is before the U.S. Tax Court. See 26 U.S.C. § 6015(e)(1)(B); 26 C.F.R. § 1.6015-7(c). While the court has limited discretion to grant or deny a foreclosure action even though it may affect an innocent spouse's property rights, the Court concludes that at this stage, equity warrants a stay of the proceedings because relief as to Victoria necessarily affects the foreclosure relief Plaintiff seeks.

In Rodgers, the United States Supreme Court held that § 7403 contemplates the sale of the entire property even though the taxpayer's spouse also has an interest but does not owe any indebtedness and the statute's permissive language leaves "limited room . . . for the exercise of reasoned discretion." Rodgers, 463 U.S. at 706. The "limited discretion by § 7403 should be exercised rigorously and sparingly, keeping in mind the

---

[8] In its sur-reply, the United States, for the first time, argues that the Court should also stay the proceedings as to Victoria as to tax year 1995 since Victoria filed a request for innocent spouse relief in 2000, (Case No. 10cv817, Dkt. No. 27-16), with a denial on April 25, 2003 by the IRS and the denial was not appealed with the U.S. Tax Court. (Dkt. No. 77-1 at 4.) First, the United States cannot raise arguments for the first time in a sur-reply. See e.g., Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Moreover, while the request for innocent spouse relief was wholly denied on April 25, 2003, (Dkt. No. 77-1), interestingly, on May 16, 2018, the IRS granted § 6015(f) relief in part in the amount of $193,272.00 and denied relief as to $40,437.00 for the same tax year. (Dkt. No. 65-4 at 17.) Plaintiff has not addressed the effect of the two different IRS rulings on the U.S. Tax Court's jurisdiction.

12

3:17-cv-01046-GPC-AGS

Government's paramount interest in prompt and certain collection of delinquent taxes." Id. at 711. In exercising the limited discretion, the Court laid out several non-exhaustive factors for courts to consider. Id. at 711. "First, a court should consider the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes. . . Second, a court should consider whether the third party with a non-liable separate interest in the property would . . . have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors. Third, a court should consider the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompensation . . . Fourth, a court should consider the relative character and value of the non-liable and liable interests held in the property. Rodgers, 463 U.S. at 710-11.

In United States v. Battersby, the district court granted an innocent spouse's motion to stay the proceedings of selling the Property jointly owned with her tax delinquent spouse in which she is the 50% joint owner. 398 F. Supp. 2d 865, 866 (N.D. Ohio 2005). After considering the Rodgers factors, the Court concluded, that "for now, while she awaits a determination on her request for innocent spouse relief, the equities weigh in favor of staying the action against Amy Battersby and staying any proceedings against the Kirtland property even to satisfy the individual liability of Gregg Battersby." Id. at 867-68. The "innocent spouse" argued that the government should not be permitted to sell her interest in the property before the IRS determines the merits of her innocent spouse request because she operated a horse breeding and boarding business and would be significantly prejudiced by a forced sale against any government prejudice. Id. at 866-87. The court noted that there was no harm to the government because it could proceed

to foreclose on two other properties owned by the debtor to satisfy the tax liabilities. Id. at 868.

However, in another case where the district court granted the government's motion for summary judgment granting a foreclosure order on the subject property, the court rejected the non-delinquent spouse's defense that she would qualify as an "innocent spouse" under 26 U.S.C. § 66[9] because "innocent spouse relief only serves to protect a non-liable spouse from personal tax liability" which the IRS had not asserted against her. United States v. McGrew, CV14-02647-RASX, 2014 WL 7877053, at *8, 11 (C.D. Cal. Dec. 19, 2014), aff'd, 669 Fed. App'x 831 (9th Cir. 2016). While the district court concluded that Rodgers was inapplicable to the circumstances, it considered the Rodgers factors and determined they did not weigh against foreclosure. Id. at 9; see also United States v. Kraus, Case No. C16-5449 BHS, 2018 WL 1610225, at *6 (W.D. Wash. Apr. 3, 2018) ("The Court notes that innocent spouse protection does not entitle [non-liable spouse] to prevent foreclosure on the Government's tax liens."). "While innocent spouse relief prevents the assessment of a tax against [an innocent spouse] individually in any separate property she may possess, it does not affect the ability of the Government to pursue collection remedies against [an innocent spouse's] interest in community property." Kraus, 2018 WL 1610225 at *6.

Here, because Victoria has appealed the IRS Determinations on all years of tax liability with the U.S. Tax Court, the foreclosure case should be stayed as to Victoria

---

[9] In McGrew, the spouse sought innocent spouse relief under 26 U.S.C. § 66 while in this case, Victoria sought innocent spouse relief under 26 U.S.C. § 6015. 26 U.S.C. § 66(c) applies to taxpayers in community property states where the spouses live apart and applies to income reported on a "married filing separately" return. See 26 U.S.C. § 66(a). Innocent spouse relief determinations under 26 U.S.C. § 6015 are made when a joint return has been made and are "made without regard to community property laws." See 26 U.S.C. § 6015.

pending a final ruling by the U.S. Tax Court.  See 26 U.S.C. § 6015(e)(1)(B); 26 C.F.R. § 1.6015-7(c).  The Court also concludes the case should be stayed as to Charles pending final order by the U.S. Tax Court.  The Court does not make any findings under Rodgers, but in considering equities in issuing a stay, the Court concludes that a stay is warranted until a final decision by the U.S. Tax Court.  While there is some prejudice to the government for its inability to collect on its judgment from 2012, the Court notes that the outstanding judgment has been in existence for almost six years so additional time would not severely prejudice the government.  Moreover, based on the representations by the parties, it appears there is sufficient equity in the property to satisfy the government's judgment if foreclosure were to be entered in the future.  Lastly, a determination of whether Victoria is entitled to innocent spouse relief would be considered a factor in the Court's analysis under Rodgers.

      Accordingly, the Court GRANTS a stay pending a final ruling on the issue of innocent spouse relief by the U.S. Tax Court.  If the U.S. Tax Court rules in favor of dismissal of some tax years in the government's recent motion to dismiss, the Court will consider additional briefing as to whether the case should continue to be stayed pending a ruling on the remaining tax years.  If the U.S. Tax Court denies the motion to dismiss, the case will be stayed until the U.S. Tax Court's ruling becomes final.

## Conclusion

      Based on the reasoning above, the Court **GRANTS in part** Defendants' motion to stay the proceedings until a final ruling by the U.S. Tax Court.  Within seven (7) days, Plaintiff shall inform the Court of the Tax Court's ruling.  In the event the U.S. Tax Court grants the government's motion to dismiss certain tax years, Plaintiff shall notify the Court of this ruling along with a brief as to whether the stay should be lifted which shall

be filed within ten (10) days of the U.S. Tax Court's decision.  Once Plaintiff has filed its brief, Defendants shall file their response within ten (10) days of the government's brief.

In light of the Court's ruling, the Court DENIES Defendants' ex parte motion to extend the deadline to file dispositive motions.  (Dkt. No. 83.)

IT IS SO ORDERED.

Dated:  October 16, 2018

Hon. Gonzalo P. Curiel
United States District Judge