UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CHARLES LE BEAU, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 17cv1046-LL-AHG<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CHARLES LE BEAU**<br><br>**[ECF No. 125]** |

Before the Court is Plaintiff United States of America's ("Plaintiff" or "United States") Motion for Partial Summary Judgment Against Charles Le Beau. ECF No. 125. Plaintiff's Motion for Partial Summary Judgment has been fully briefed, and the Court deems it suitable for submission without oral argument. For the reasons stated below, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment in its entirety.

**I.　BACKGROUND**

　　**A.　Factual Disputes**

The Court has taken the relevant facts from the parties' declarations, exhibits, and from each of the parties' respective Rule 56.1 statements of facts. ECF No. 125-2, Plaintiff's Separate Statement of Undisputed Material Facts ("PSSUF"); ECF No. 154 at 21–40, Defendant's Separate Statement of Disputed and Undisputed Material Facts ("DSSUF"). Based on the parties' statements of facts, the Court references Defendant

Charles Le Beau's ("Defendant" or "Charles") version of the facts when noting a genuine factual dispute. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (where genuine disputes exist, the courts "view the evidence in the light most favorable to the opposing party."). The Court also notes where facts are disputed by the non-moving party.

Additionally, because Defendant is proceeding pro se in this action, the Court will liberally construe Defendant's Amended Opposition to the Motion and Defendant's Separate Statement of Disputed and Undisputed Facts. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed."). However, "ordinary pro se litigants, like other litigants, must comply strictly with the summary judgment rules" and supply a minimum factual basis for the claims they assert against defendants. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

### B.  Factual Background

Charles and Victoria Le Beau ("Victoria") were previously married, are now legally separated, and currently reside together at 1999 Via Segovia, La Jolla, CA 92037 (the "Property"). PSSUF ¶¶ 1, 2, 5, 7; ECF No. 125, Ex. 1, Deposition of Charles Le Beau ("Charles Dep.") 6:10-21, 8:6-12; ECF No. 125, Ex. 2, Deposition of Victoria Le Beau ("Victoria Dep.") 5:13-20. Charles and Victoria have two adult sons together. PSSUF ¶ 6.

#### 1.  Transfers of the Property

In 1980, Charles and Victoria Le Beau acquired the Property as "Husband and Wife, as joint tenants" by grant deed. *Id.* ¶ 3. On April 1, 1987, by quitclaim deed, Charles transferred his interest in the Property to Victoria for no consideration and for no documentary transfer tax. PSSUF ¶ 12; ECF No. 125, Ex. 4. In 1988, the Le Beaus decided to re-finance their mortgage, which required both Charles and Victoria to be on the title for the Property. PSSUF ¶ 16. As such, on May 6, 1988, by grant deed, Victoria transferred title to the Property back to Charles and Victoria as joint tenants for no consideration and for no documentary transfer tax. *Id.* ¶ 14; ECF No. 125, Ex. 5; Charles Dep. 27:12-24. Five days later, on May 11, 1988, Charles and Victoria executed a deed of trust on the Property in favor of Security Allied Services to secure a loan in the amount of $305,250.00. PSSUF

¶ 15. On August 9, 1989, by quitclaim deed, Charles and Victoria transferred title to the Property to Victoria for no consideration and for no documentary transfer tax. *Id.* ¶ 17; ECF No. 125, Ex. 7. On March 22, 1991, by interspousal transfer grant deed, Charles transferred his interest in the Property to Victoria again for no consideration. PSSUF ¶¶ 18–19; ECF No. 125, Ex. 8.

On April 10, 2003, Charles LeBeau signed and filed articles of incorporation with the California Secretary of State for an entity called Casa de Erin, LLC, which has since been suspended by the California Secretary of State. PSSUF ¶¶ 24, 34, 38. Charles listed himself as the registered agent of Casa de Erin and Victoria as the Manager/Member. *Id.* ¶ 25. Casa de Erin "never operated as a business" because it was a holding company for the Property. *Id.* ¶ 28. It was solely Charles' idea to incorporate Casa de Erin before his "second huge stomach surgery," in case something happened to him during surgery. *Id.* ¶¶ 26, 29.

On April 22, 2003, by quitclaim deed and under Charles' direction, Victoria transferred title to the Property to Casa de Erin, LLC, for no consideration other than "love and affection." *Id.* ¶¶ 30–33; ECF No. 125, Ex. 12; Charles Dep. 32:13-22; Victoria Dep. 17:25-18:21, 23:24-24:4. On January 12, 2006, by quitclaim deed, Charles rescinded the deed to Casa de Erin, LLC and transferred the Property back to Victoria for no consideration. PSSUF ¶ 35; ECF No. 125, Ex. 13; Victoria Dep. 23:24-24:4. Victoria currently remains the Property's nominal title holder. PSSUF ¶ 35.

Defendant alleges that the Le Beaus were exempt from paying documentary transfer taxes and there was arms-length consideration in these multiple transfers of property because Charles continued to pay all expenses related to the Property. DSSUF ¶¶ 12, 14, 17, 18, 32–33, 35–36.

### 2. Tax Assessments and Prior Judgment

Charles Le Beau started his own law firm, the Law Offices of Charles P. Le Beau, in 1987. PSSUF ¶¶ 21, 40. Between 1994 and 2008, a delegate of the Secretary of the Treasury made assessments against Charles and Victoria LeBeau for unpaid federal income tax liabilities for the 1992, 1993, 1994, 1995, 1997, 1998 and 1999 tax years. *Id.* ¶ 39; ECF

125, Ex. 14 at 2. Further, between 1995 to 2008, a delegate of the Secretary of the Treasury made assessments against Charles for the Law Offices of Charles P. Le Beau's failure to pay federal payroll taxes for eighteen tax periods between 1994 and 2001. PSSUF ¶ 40; ECF Nos. 125, Exs. 14, 15. Charles and Victoria did not file their joint 1987 IRS tax return until May 25, 1989, and they did not file their joint 1988 IRS tax return until June 7, 1990. PSSUF ¶ 68. Charles also failed to file all four quarters of his law firm's 1989 IRS employment tax returns until November 12, 1992. *Id.* Defendant contends that he paid some employment taxes, but he was not credited for these payments during these assessments. DSSUF ¶¶ 40, 44, 46, 47.

On April 19, 2010, in connection with these tax assessments, the United States brought a civil action against Victoria Le Beau, Charles Le Beau, and Charles Le Beau's sole proprietorship to reduce the federal tax assessments to judgment. PSSUF ¶ 41; *see United States v. Le Beau* ("*Le Beau I*"), Case No. 10-cv-00817-GPC-NLS (S.D. Cal.). On October 29, 2012, the Court entered a money judgment against Charles and Victoria in the amount of $1,157,165.85, plus interest accruing after July 1, 2012, with respect to the federal income tax liabilities. PSSUF ¶ 43; ECF No. 125, Ex. 16. The Court also entered a money judgment against Charles in the amount of $371,257.66, plus interest accruing after July 1, 2012, with respect to the employment tax liabilities. PSSUF ¶ 44; ECF No. 125, Ex. 16. Notice and demand were sent for the tax years and periods that comprise the judgment. PSSUF ¶ 42. On March 14, 2013, the United States recorded an abstract of the judgment with the San Diego County Recorder of Deeds for the judgments obtained in *Le Beau I*.[1] *Id.* ¶ 47. The money judgments for the tax liabilities remain unsatisfied. *Id.* ¶¶ 45–46.

---

[1] Plaintiff's Separate Statement of Undisputed Material Facts states that the Abstract of Judgment was recorded for the judgments obtained in "Case No. 17-cv-1046," however, the Abstract of Judgment recorded with the San Diego County Recorder of Deeds states that the abstract was recorded for the judgments obtained in *Le Beau I*. *See* PSSUF ¶ 47; ECF No. 125, Ex. 9.

### 3. Charles Le Beau's Continued Use of the Property

Charles Le Beau's personal belongings are located at the Property. *Id.* ¶ 9. Charles has a key to the Property and uses the Property address as his mailing address for correspondence in this current action and for mortgage statements. *Id.* ¶¶ 10–11, 54. The utility bills for the Property from San Diego Gas & Electric are sent to the Property's address and are solely addressed to Charles. *Id.* ¶¶ 64–65. In addition, Charles has made improvements to the Property, such as negotiating to have a replacement "stone/slate" roof installed following damage from a storm and paying approximately $35,000.00 to have a heated pool installed at the Property for health and medical benefits sometime between 2000 and 2002. *Id.* ¶¶ 57–59.

Charles Le Beau has always been listed as the borrower on the Property's mortgage because "he made the money." PSSUF ¶ 48. On July 24, 2014, Charles executed a mortgage modification agreement with Bank of America for the Property's mortgage. *Id.* ¶ 53. Charles claims the mortgage interest deduction on his personal income tax returns for the interest paid to Bank of America for the Property's mortgage. *Id.* ¶ 55. Charles Le Beau is also the "named insured" on the Liberty Mutual homeowner's insurance policy for the Property, which covers $478,580.00 of personal property loss for Charles and Victoria Le Beau. *Id.* ¶¶ 61–63.

Further, the Property is worth at least $2.55 million. PSSUF ¶ 3; DSSUF ¶ 3. Beginning on May 25, 2017, Charles and Victoria executed five promissory notes in which they pledged the Property as collateral to obtain personal loans from the Park Family Trust. *Id.* ¶ 66. Pursuant to this personal loan secured by the Property, the Park Family Trust wrote at least two checks to Charles, one cashed on February 11, 2019, for $15,000.00, and another cashed on November 14, 2019, for $6,666.66. *Id.* ¶ 67.

### C. Procedural Background

On May 23, 2017, the United States brought this action against Defendants Charles and Victoria Le Beau (collectively "Defendants") to enforce its judgment liens against its interests in the Property. ECF No. 1. On September 29, 2017, Plaintiff filed a first amended

complaint. ECF No. 33. On October 23, 2017, Defendants filed a motion to dismiss Plaintiff's first amended complaint and stay the proceedings. ECF No. 36. The Court denied Defendants' motions to dismiss and granted in part Defendants' request to stay proceedings as to Victoria Le Beau for the 1995 and 1997-1999 tax years. ECF No. 42.

On June 11, 2018, Plaintiff filed a Second Amended Complaint against Defendants Charles and Victoria Le Beau. ECF No. 58, Second Amended Complaint ("SAC"). Bank of America, N.A., the State of California, Merck & Co., Inc., San Diego County, and Joseph Kelly are named as Defendants because they may each claim an interest in the Property.[2] *See id.* ¶¶ 4–9. Plaintiff asserts three causes of action seeking to: "(1) determine that the United States' federal tax and judgment liens attach to all property held by Victoria LeBeau, including real property located at 1999 Via Segovia, La Jolla, CA 92037 (the "Property"); (2) determine that Victoria LeBeau holds Charles LeBeau's one-half interest in the Property as nominee for Charles LeBeau or, in the alternative, set aside the transfers of Charles LeBeau's interest in the Property to Victoria LeBeau and Casa de Erin, LLC as fraudulent conveyances; and (3) to enforce the United States' judgment and tax liens against Charles and Victoria LeBeau upon the Property." *Id.* at 2.

On June 22, 2018, Victoria Le Beau filed a petition in the U.S. Tax Court for innocent spouse relief challenging the IRS' determinations. *See* ECF No. 85 at 3. On July 30, 2018, Defendants filed a motion to stay proceedings in light of Victoria's petition for innocent spouse relief in the U.S. Tax Court and any possible appeals to the Ninth Circuit. ECF No. 65. On October 16, 2018, the Court stayed this case pending the resolution of Victoria's petition in the U.S. Tax Court. ECF No. 85. Three years later, on October 29, 2021, Plaintiff filed a motion to lift the stay. ECF No. 94. On March 1, 2022, the Court partially lifted the stay as to Charles to proceed to a determination of Charles' ownership interest to the Property. *See* ECF No. 104.

---

[2] William O. Dougherty was also named as a defendant in the SAC, but he was dismissed from this action on August 2, 2018. *See* ECF No. 68.

On February 1, 2023, Plaintiff filed its Motion for Partial Summary Judgment Against Charles Le Beau, their statement of facts, and supporting submissions. ECF No. 125. On April 13, 2023, Defendant Charles Le Beau filed an opposition to the Motion for Partial Summary Judgment. ECF No. 137. On May 4, 2023, Plaintiff filed a reply to Defendant's opposition. ECF No. 138. Further, on May 19, 2023, Defendant filed a sur-reply without obtaining leave of the Court. ECF No. 139. On November 6, 2023, after following this Court's order directing Defendant to file an amended opposition[3] and multiple extensions, Defendant filed an amended opposition in response to the Motion for Partial Summary Judgment with his statement of facts.[4] See ECF No. 154, Amended Opposition to Motion ("Amended Opposition" or "Amended Oppo."). Defendant's Amended Opposition also included a Request for Judicial Notice.[5] *Id.* at 46. On December 1, 2023, Plaintiff filed a reply to Defendant's Amended Opposition. ECF No. 157, Reply.

---

[3] This Court provided Defendant Charles Le Beau with notice of what is required to oppose a motion for summary judgment. *See* ECF No. 143 at 2 (order directing Defendant to file amended opposition). The order noted that Defendant had not "supported the factual contentions in his briefs with supporting declarations or affidavits" and provided Defendant with the opportunity to file an amended opposition. *See id.* at 2–3.

[4] Defendant captioned his amended opposition as a "Sur Opposition," but the Court will construe it as an amended opposition because the Court directed Defendant to file an amended opposition. ECF No. 143.

[5] Defendant requests that the Court take judicial notice of the underlying U.S. Tax Court case and filings, including IRS expert Mark Lewis' Memorandum. ECF No. 154 at 46. Defendant states that Mark Lewis' Summary "Memorandum is attached as Defendant's exhibit in his Sur Opposition," but there are no attachments to Defendant's Amended Opposition. *See generally* Amended Oppo. Nevertheless, the Court **GRANTS** this request and takes judicial notice of the U.S. Tax Court filings and Mark Lewis' Memorandum as courts "may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Defendant also requests that the Court take judicial notice of "all of Defendant's files in this Court." ECF No. 154 at 46. However, on a motion for summary judgment, a court considers all evidence in the record. *See* Fed. R. Civ. P.

## II. LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 248 (citations omitted).

The moving party bears the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. *See Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to show "there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, the parties can either cite to evidence supporting their own position or show the other side's position is either unsupportable or devoid of any genuine dispute. Fed. R. Civ. P. 56(c)(1). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48; *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.")).

---

56(c). Accordingly, the Court **DENIES** Defendant's request to take judicial notice "of all of Defendant's files in this Court" as unnecessary.

## III. DISCUSSION

Plaintiff moves for partial summary judgment with respect to Charles Le Beau for Counts I and III of the SAC. ECF No. 125-1, Motion for Partial Summary Judgment ("Motion" or "Mot."). Plaintiff seeks a judgment that: (1) the United States has valid tax liens that attach to Charles' interest and rights to Property; (2) Victoria holds Charles' one-half interest in the Property as his nominee; and (3) the United States has a right to foreclose its tax liens and apply the proceeds of the sale toward Charles' unpaid federal tax debt. *Id.* at 10. The Court addresses each of these issues and arguments below.

### A.   Enforcement of Tax Lien

Plaintiff seeks a judgment that the United States has valid tax liens against Charles Le Beau for his federal income tax liabilities from 1992-1995 and 1997-1999, as well as eighteen quarters of unpaid federal payroll taxes from his sole proprietorship from 1994-2001. *See* Mot. at 11–12.

Pursuant to 26 U.S.C. § 6321, a lien for unpaid taxes is created in favor of the United States upon all property and property rights belonging to the taxpayer. 26 U.S.C. § 6321. The lien attaches to all property or property rights the taxpayer holds or subsequently acquires. *Id.*; *see also United States v. Donahue Indus. Inc.*, 905 F.2d 1325, 1332 (9th Cir. 1990) ("The law is settled that a levy may effectively reach property on which a federal tax lien has attached"). Further, such a lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

Here, assessments were made against Charles and Victoria LeBeau for unpaid federal income tax liabilities for the 1992, 1993, 1994, 1995, 1997, 1998, and 1999 tax years and for unpaid federal payroll taxes for eighteen tax periods between 1994 and 2001. PSSUF ¶¶ 39, 40; ECF Nos. 125, Exs. 14, 15. These assessments created valid tax liens on all property and property rights that Charles held. *See* 26 U.S.C. § 6321.

In connection with these tax assessments, the Court entered a money judgment against Charles and Victoria Le Beau in *Le Beau I*. PSSUF ¶ 43; ECF No. 125, Ex. 16. Notice and demand were sent for the tax years and periods that comprise the judgment. PSSUF ¶ 42. Plaintiff also recorded an abstract of judgment for the judgments entered in *Le Beau I* with the San Diego County Recorder of Deeds. *Id.* ¶ 47. Plaintiff cites to evidence that establishes that assessments were made against Charles and Victoria and notice and demand were sent for these liabilities, and Defendant has presented no evidence to dispute these assessments.

Defendant argues that he would have paid the tax he owed in 2002 and 2003 if he had "received more money" from his medical malpractice suit. *See* Amended Oppo. at 9. Yet, the 2002 and 2003 tax liabilities and the amount of Charles' liabilities are not at issue in this action. Defendant further argues that the 1995 tax year should not have been included in the tax assessments because "IRS expert Mr. Mark Lewis, has said verbally in a couple teleph[o]ne conferences with Victoria and Defendant Charles that [the] taxable year 1995 should have not been included in the Tax Audit." Amended Oppo. at 11. Defendant relies on a "Memorandum" that he states, "is attached as Defendant's exhibit in his Sur Opposition." *Id.* However, Defendant has not attached any exhibits to his Amended Opposition, and Defendant has not presented any evidence supporting his argument that the 1995 tax year should not have been included in the assessments. *See generally* Amended Oppo. Lastly, Defendant argues that the United States does not have any valid tax liens against Charles because "Victoria is not liable for Charles' taxes." Amended Oppo. at 14. Here, Plaintiff's Motion only seeks to enforce the United States' tax liens against Charles and his interest in the Property, and "[t]he resolution of Counts II and III as to whether the federal tax and judgment liens attach to Victoria Le Beau's interest will still remain." ECF No. 125 at 2; Reply at 8 ("In this motion, the United States seeks to enforce its liens based on Charles Le Beau's liabilities, not Victoria Le Beau's, therefore Victoria Le Beau's liabilities are not at issue.").

Therefore, Plaintiff has met its burden in proving there is no genuine issue of material fact as to whether the United States' tax liens against Charles Le Beau are valid. Plaintiff has provided substantial evidence that the prior tax assessments and ruling in *Le Beau I* uphold the validity of the tax liens and their enforceability against Charles. Accordingly, Plaintiff is entitled to enforce the tax liens against Charles for his federal income tax liabilities from 1992-1995 and 1997-1999, as well as eighteen quarters of unpaid federal payroll taxes between 1994 and 2001.

### B. Nominee Status

Next, Plaintiff claims that Charles still maintains a one-half interest in the Property because Victoria Le Beau is holding Charles' one-half interest as his nominee. *See* Mot. at 13–25. Plaintiff seeks to attach the federal tax liens on Charles Le Beau' one-half interest in the Property. *See id.* at 13. In opposition, Defendant states that Victoria is not Charles' nominee.[6] *See* Amended Oppo. at 13, 14–18.

"The Supreme Court has interpreted section 6321 to apply to all property of a taxpayer, including property that is held by a third party as the taxpayer's nominee or alter ego." *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013) (*citing G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977)). "A nominee is one who holds bare legal title to property for the benefit of another." *Id.* While California courts have recognized nominee ownership, they have not specified the factors relevant to determining whether a person or entity holds title as a nominee. *Id.* at 1068. Therefore, the

---

[6] Defendant also argues Victoria Le Beau is not a nominee because she "is not a Defendant in this case" as this Court "ruled earlier that there is a Partial Stay as to [Victoria]." Amended Oppo. at 10. This action is stayed as to Victoria and her interest in the Property pending the resolution of her petition for innocent spouse relief in the U.S. Tax Court. *See* ECF No. 104. However, the issue of whether Victoria holds Charles' one-half interest as his nominee is not before the U.S. Tax Court. As stated in the Court's previous order partially lifting the stay, the portions of this case related to Victoria that could be affected by the U.S. Tax Court's decision are stayed. *See* ECF No. 104 at 3.

Ninth Circuit has adopted the six-factor test set out by the Sixth Circuit in *Spotts v. United States*. The six factors are:

(1) whether inadequate or no consideration was paid by the nominees;

(2) whether the properties were placed in the nominees' names in anticipation of a lawsuit or other liability while the transferor remains in control of the property;

(3) whether there is a close relationship between the nominees and the transferor;

(4) failure to record the conveyances;

(5) whether the transferor retained possession; and

(6) whether the transferor continues to enjoy the benefits of the transferred property.

*Id.* at 1070 (citing *Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005)); *see also United States v. Acacia Corp. Mgmt., LLC*, 691 Fed. App'x. 402, 403–04 (9th Cir. 2017) (holding that the district court properly applied the *Spotts* six-factor test). No one factor is dispositive, and courts must look to the totality of the circumstances. *Fourth Inv. LP*, 720 F.3d at 1070. The "overarching consideration is 'whether the taxpayer exercised active or substantial control over the property.'" *Id.* (citing *In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999)). The Court addresses each of the six nominee factors in turn.

### 1. Adequacy of Consideration

The first factor considers whether the nominee paid inadequate or no consideration. *Id.* First, Defendant states that all transfers of the Property were supported by arms-length transfers and consideration. *See* Amended Oppo. at 15. However, the United States has introduced undisputed evidence that the title transfers between Charles and Victoria Le Beau were not arms-length transactions. Indeed, Charles and Victoria "stood at both ends of virtually every transaction relevant to the transfer" of the Property. *Leeds LP v. United States*, 807 F. Supp. 2d 946, 971 (S.D. Cal. 2011); *see*, *e.g.*, ECF No. 125, Ex. 3 (grant deed where Charles and Victoria acquired the Property); ECF No. 125, Exs. 4, 5, 7, 8, 12, 13 (deeds between Charles and Victoria transferring title). The 1987 quitclaim deed also explicitly states that "no consideration [was] paid." ECF No. 125, Ex. 4. Moreover, although the 1988, 1989, 1991, 2003, and 2006 deeds state that the transfer was in exchange

"FOR A VALUABLE CONSIDERATION," there is no evidence beyond that statement as to the amount, if any, of consideration paid. *See* ECF No. 125, Exs. 5, 7, 8, 12, 13. Victoria also testified that she "never got any money or anything" or paid anything to transfer title or have title put to her name for the 2003 and 2006 Casa de Luna, LLC title transfers.[7] *See* Victoria Dep. 23:24-24:4.

Second, Defendant argues that the "transfers of ownership were done for estate and asset protection purposes," which requires no consideration. *See* Amended Oppo. at 11–12; *see also United States v. Weathers*, 532 F. Supp. 3d 1030, 1044 (W.D. Wash. 2021) ("[Defendants] argue that estate planning is a legitimate reason to transfer the properties, [which] requires no additional consideration"). The 1988 grant deed transferred title from Victoria Le Beau back to Charles and Victoria because Charles and Victoria had decided to re-finance the Property's mortgage. PSSUF ¶¶ 14, 16; Charles Dep. 27:12-24. Here, however, the 1988 title transfer is not relevant to Plaintiff's argument that Victoria held bare legal title to the Property as the nominee of Charles. *See Fourth Inv. LP*, 720 F.3d at 1066. Defendant's estate planning argument fails to address the transfers of title of the Property to Victoria, such as the 1987, 1989, 1991, and 2006 transfers, which are relevant to the nominee theory of ownership in this Motion and require the Court to consider whether Victoria paid consideration.

---

[7] Even if Charles and Victoria had paid each other consideration, these transfers of title would have been subject to a documentary transfer tax under California law. *See* Cal. Rev. & Tax Code § 11911 (documentary tax may be imposed "when the consideration or value of the interest or property conveyed . . . exceeds one hundred dollars ($100)"). Defendant acknowledges that no tax had been paid, but states that it was because he was exempt. DSSUF ¶¶ 12, 14, 17. To qualify for an exemption to the documentary transfer tax under California law, a deed must include "a written recital, signed by either spouse, stating that the deed, instrument, or other writing is entitled to the exemption." Cal. Rev. & Tax Code § 11927. Here, however, Defendant has not provided any written recitals stating that the transfers were entitled to exemptions. As such, even if Charles and Victoria had paid each other consideration, Defendant cannot claim he was exempt from documentary transfer taxes.

Lastly, Defendant argues that he prepared a transmutation agreement on August 9, 1989, in which Charles and Victoria Le Beau exchanged consideration. Amended Oppo. at 15; *see* ECF No. 60 at 39–69 (post-nuptial transmutation agreement between Charles and Victoria). Both before and during marriage, spouses may agree to change the status of their property through transmutation. *In re Marriage of Campbell*, 88 Cal. Rptr. 2d 580, 583 (1999) ("A transmutation is an interspousal transaction or agreement that works a change in the character of the property."). "In order for a transmutation of property to occur, statutory formalities must be met." *Id.* In particular, "[a] transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." Cal. Fam. Code § 852(a). Additionally, a "transmutation of real property is not effective as to third parties without notice thereof unless recorded." Cal. Fam. Code § 852(b).

According to Defendant, Charles and Victoria Le Beau exchanged consideration in the transmutation agreement as Charles was receiving title to the Property in exchange for Victoria receiving Charles' law office "equipment, furniture, and accounts receivables." ECF No. 60 at 44, 56; Amended Oppo. at 15–16. While the transmutation was made in writing, Defendant acknowledges the agreement was "never recorded in order to maintain the privacy of the parties." Amended Oppo. at 15. Because the transmutation was never recorded, the transmutation of real property is therefore not effective against third parties like Plaintiff.[8] *See* Cal. Fam. Code § 852(b).

---

[8] The Court notes that Charles and Victoria Le Beau did not sign the transmutation agreement until April 22, 2003. ECF No. 60 at 53. As such, Charles and Victoria cannot claim there was consideration based on this transmutation agreement for any deeds before April 22, 2003. *See Estate of Wilson*, 134 Cal. Rptr. 749, 756 (1976) ("the transmutation agreement was held to be effective [f]rom the date of its execution."). The 2003 and 2006 quitclaim deeds were the only title transfers on the day of or after the transmutation agreement's execution date. However, as mentioned above, Victoria testified that she

Thus, even resolving all factual disputes in the light most favorable to Defendant, a rational finder of fact could not conclude that there was consideration for the transfers of the Property. Accordingly, the first factor weighs in favor of Plaintiff.

### 2. Transferred in Anticipation of Lawsuits or Other Liabilities

The second factor examines whether the Property was transferred in anticipation of a lawsuit or other liabilities while the transferor remained in control of the Property. *Fourth Inv. LP*, 720 F.3d at 1070.

The record demonstrates that the first title transfer of the Property was recorded in 1987, the same year that Charles Le Beau started his own law firm. PSSUF ¶¶ 12, 21. In addition, on August 9, 1989, Charles and Victoria transferred title to the Property to Victoria for no consideration by quitclaim deed. *Id.* ¶ 17. These title transfers closely follow the 1987 and 1988 tax years, the same years that Charles and Victoria failed to file their tax returns. *Id.* ¶ 68. Specifically, Charles and Victoria did not file the 1987 tax return until May 25, 1989, and did not file the 1988 tax return until June 7, 1990. *Id.* Both tax returns were over two years late. Charles also did not file all four quarters of his law firm's employment tax returns until November 12, 1992. *Id.* The proximity in the dates of the title transfers, Defendant starting a law firm, and Charles and Victoria's tax filings is consistent with the United States' contention that the title transfers were made in anticipation of a lawsuit or other liabilities. Moreover, Defendant even acknowledges that these title transfers were effectuated to "protect his family," as "California is a hyper-litigious [s]tate." Amended Oppo. at 17.

Further, Plaintiff cites to evidence that Charles Le Beau maintained ownership and control of the Property after these title transfers. For example, in 2003, Victoria transferred the Property to Casa de Erin, LLC, an entity that was solely Charles' idea and that he had incorporated. PSSUF ¶¶ 25–26, 31. Defendant contends that the title transfer to Casa de

---

"never got any money or anything" or paid anything for the 2003 and 2006 title transfers. *See* Victoria Dep. 23:24-24:4.

Erin was done in anticipation of Charles' life-threatening stomach surgery. *See* Amended Oppo. at 16. However, it is undisputed that Charles directed Victoria to transfer the Property to Casa de Erin, and that Casa de Erin was Charles' "thing." PSSUF ¶ 30. It is also undisputed that Charles made improvements to the Property after the title transfers. *Id.* ¶ 57. Charles had a replacement "stone/slate" roof installed and paid $35,000.00 to have a heated pool installed at the Property. *Id.* Although the roof was replaced to repair damage from a storm and the heated pool installed for medical reasons, these improvements establish that Charles continued to exert the same type of control over the Property as an owner of a property. Accordingly, the second factor weighs in favor of Plaintiff.

### 3. Close Relationship

The third factor evaluates whether a close relationship exists between the nominee and transferor. *Fourth Inv. LP*, 720 F.3d at 1070.

Defendant contends there is no close relationship between Charles and Victoria Le Beau because they are legally separated. *See* Amended Oppo. at 13–14, 16–17. Although Charles and Victoria filed for legal separation in 2017, Charles and Victoria were married during the relevant time period, indicating a close relationship. PSSUF ¶¶ 1, 5. Further, even if they are currently separated, Charles and Victoria also have two adult sons together and Charles still sleeps at the Property seven days a week. *Id.* ¶¶ 6–8; DSSUF ¶¶ 7–8. Moreover, Victoria has testified that she drives Charles to meet people, goes to the store and gets food for Charles, takes Charles to his doctor's appointments, and picks up Charles' medical prescriptions with his permission. *See* Victoria Dep. 6:1-17.

Defendant further claims that he has been a "paying tenant" at the Property since 1987. Amended Oppo. at 15–18; DSSUF ¶¶ 7–8. Yet, Defendant has not provided a minimum factual basis for this claim and there is no evidence in the record that Charles Le Beau is a paying tenant and that Charles and Victoria have a landlord tenant relationship. Even viewed in the light most favorable to Defendant, there is substantial evidence that there is a close relationship between Charles and Victoria. Accordingly, the third factor weighs in favor of Plaintiff.

#### 4. Failure to Record Transfers

The fourth factor evaluates whether there was a failure to record conveyances of title. *Fourth Inv. LP*, 720 F.3d at 1070. Here, it is undisputed that Charles and Victoria Le Beau recorded the transfers of title to the Property. *See* PSSUF ¶¶ 12, 14, 17, 18, 31, 35. Accordingly, the fourth factor weighs in favor of Defendant.

#### 5. Retaining Possession

The fifth factor evaluates whether the transferor continued to retain possession of the transferred property. *Fourth Inv. LP*, 720 F.3d at 1070. The Ninth Circuit has held that the fifth factor is satisfied when transferors continue to maintain possession of the property and enjoy it as their primary residence exactly as they had before the transfer. *Id.* at 1071.

The United States has introduced undisputed evidence that Charles Le Beau continued to maintain possession of the Property after purportedly transferring it to Victoria. For example, Charles has continued to reside at the Property since 1980, and his personal belongings are located at the Property. PSSUF ¶¶ 7, 9. Charles has a key to the Property and uses the Property address as his mailing address for correspondence in this case and for his Bank of America mortgage statements. *Id.* ¶¶ 10–11, 54. The utility bills for the Property from San Diego Gas & Electric are sent to the Property's address and are addressed to Charles. *Id.* ¶¶ 64–65.

Defendant has also always been listed as the borrower on the Property since Charles and Victoria Le Beau acquired it in 1980 because Charles "made the money." *Id.* ¶¶ 3, 48. Charles has been the sole borrower listed on the mortgage after the mortgage modification agreement was executed in 2014. *Id.* ¶ 53; ECF No. 125, Ex. 20 (Bank of America mortgage statement). Charles claims the mortgage interest deduction on his personal income tax returns for the interest paid on the Property's mortgage. PSSUF ¶¶ 54–55. Additionally, Charles Le Beau is the "named insured" on the Liberty Mutual homeowner's insurance policy for the Property, which covers $478,580.00 of personal property loss for Charles and Victoria. *Id.* ¶¶ 61–63.

Even viewed in the light most favorable to Defendant, there is substantial evidence that Charles Le Beau continued to control and maintain possession of the Property. *See United States v. Boyce*, 38 F. Supp. 3d 1135, 1154 (C.D. Cal. 2014) (finding that receiving mail at a property's address, having gas and electric utilities remain in the transferor's name, and continuing to pay the mortgage on the property establishes that the transferor remains in possession of the property); *Acacia Corp. Mgmt.*, 691 F. App'x at 404 (affirming that a transferor remains in possession of the property when a transferor continues to live on the property). Accordingly, the fifth factor weighs in favor of Plaintiff.

### 6. Enjoying Benefits of the Property

The sixth factor evaluates whether the transferor continued enjoyment of the benefits of the transferred property. *Fourth Inv.*, 720 F.3d at 1070.

After the transfers, Defendant has continued to enjoy the benefits of the Property. As previously noted, Charles Le Beau continues to reside at the Property and sleeps at the Property seven nights a week. PSSUF ¶¶ 7–8. Charles paid to have a heated pool installed at the Property for his own health and medical benefits. *Id.* ¶¶ 57–59. Charles also claims the mortgage interest deduction on his personal income tax returns. *Id.* ¶¶ 54–55. Further, it is undisputed that Charles and Victoria executed five promissory notes using the Property as collateral to obtain personal loans from the Park Family Trust. *Id.* ¶ 66. Pursuant to this personal loan secured by the Property, the Park Family Trust wrote at least two checks to Charles. *Id.* ¶ 67. Charles cashed a check on February 11, 2019 for $15,000.00, and another check on November 14, 2019 for $6,666.66. *Id.* These facts, each of which is undisputed, establish that Charles continued to enjoy the benefits of the Property. Accordingly, the sixth factor weighs in favor of Plaintiff.

Balancing the nominee factors, five of the six factors weigh heavily in favor of the finding that Victoria Le Beau is the nominee of Charles Le Beau with respect to his one-half interest to the Property. In the totality of the circumstances and even resolving all factual disputes in the light most favorable to Defendant, the United States has met its burden of establishing that Victoria was a nominee of Charles on the dates of the title

transfers and on the dates of the tax assessments. Therefore, the Court concludes that Victoria Le Beau holds Charles Le Beau's one-half interest to the Property as his nominee.

### C. Sale of the Property

Lastly, Plaintiff seeks to foreclose the United States' tax liens against Charles Le Beau's one-half interest in the Property. *See* Mot. at 25–27.

After a district court adjudicates the merits of the United States' claim to the property, it may decree a sale of the property and order a distribution of the proceeds from that sale. 26 U.S.C. § 7403(c). "[I]n order to enforce a lien and collect on justly owed debts, the district court is empowered to order the sale of property to satisfy the tax debt of one tenant, so long as it compensates the nondebtor spouse for his or her interest." *In re Pletz*, 221 F.3d 1114, 1117–18 (9th Cir. 2000) (noting that § 7403 "explicitly allows a lien creditor like the IRS to sell not only a debtor's interest in a property, but the entire property held as a tenancy by the entirety by the debtor and his nondebtor wife"); *see also United States v. Rodgers*, 461 U.S. 677, 699–700 (1983) (holding that when a non-liable spouse has a joint interest in property subject to a tax lien, the non-liable spouse is entitled to their share of the proceeds from a sale under § 7403). Although courts are not required to foreclose tax liens, the Supreme Court has noted that "the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Rodgers*, 461 U.S. at 711.

Defendant argues that Victoria Le Beau's innocent spouse relief from the U.S. Tax Court may potentially bind this Court and Plaintiff should not be allowed to foreclose on the liens. Amended Oppo. at 18. Even if the U.S. Tax Court rules in favor of Victoria, innocent spouse protection does not entitle Defendant to prevent foreclosure on the Government's tax liens. To the contrary, pursuant to 26 U.S.C. § 66, innocent spouse relief only serves to protect an innocent spouse from personal liability and "nothing in [§] 66 authorizes the Internal Revenue Service to abrogate valid federal tax liens." *United States v. McGrew*, 2014 WL 7877053, at *8 (C.D. Cal. Dec. 19, 2014), *aff'd*, 669 Fed. App'x. 831

(9th Cir. 2016). Although innocent spouse relief prevents the assessment of a tax against Victoria in any separate property she may possess, it does not affect the ability of the United States to pursue collection remedies against Charles' one-half interest in the Property that Victoria holds as a nominee, even though Charles does not currently hold bare legal title to the Property. *See Fourth Inv. LP*, 720 F.3d at 1066; *In re Pletz*, 221 F.3d at 1117–18. Therefore, the United States has a right to foreclose its tax liens and sell the Property to satisfy its tax liens against Charles' interest and apply the proceeds of a future sale toward Charles' unpaid federal tax debt. *See* 26 U.S.C. § 7403.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment Against Charles Le Beau. It is hereby **ORDERED** that:

1. The United States has valid federal tax liens against Defendant Charles Le Beau in the amount of $1,726,096.70, plus interest accruing after January 3, 2023, for federal income tax liabilities, and in the amount of $540,307.38, plus interest accruing after January 3, 2023, for employment tax liabilities, until paid, on all property and rights belonging to Defendant Charles Le Beau, including, without limitation, the Property.

2. The United States' federal tax liens against Defendant Charles Le Beau encumber his one-half interest in the Property because Defendant Victoria Le Beau holds Charles Le Beau's interest in the Property as his nominee.

3. The federal tax liens against Defendant Charles Le Beau are foreclosed upon Charles Le Beau's one-half interest in the Property.[9]

**IT IS SO ORDERED.**

Dated: January 30, 2024

_____
Honorable Linda Lopez
United States District Judge

---

[9] The Court does not enter an order directing the sale of the Property or an order of distribution of sale proceeds at this time because the United States does not seek an order of sale while Victoria Le Beau's U.S. Tax Court case is pending. *See* Mot. at 6.